IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Public Interest Legal Foundation, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>Howard M. Knapp, in his official capacity as the Executive Director of the South Carolina State Election Commission,<br><br>    Defendant. | C/A No. 3:24-cv-1276-JFA<br><br>**ORDER** |

This matter is currently before the Court on cross-motions for summary judgment. (ECF Nos. 28 & 29). Each motion essentially seeks a declaration in its party's respective favor on the issue of whether the South Carolina State Election Commission ("SEC") must turn over certain documents to the Public Interest Legal Foundation, Inc. ("PILF") pursuant to the National Voter Registration Act[1] ("NVRA"). The motions have been fully briefed and the Court received oral argument on September 16, 2024. These motions are therefore ripe for review.

---

[1] The National Voter Registration Act of 1993 is encompassed within 52 U.S.C. §§ 20501-20511. Congress enacted the NVRA to establish procedures that would "increase the number of eligible citizens who register to vote in elections for Federal office;" "enhance[ ] the participation of eligible citizens as voters in elections for Federal office;" "protect the integrity of the electoral process;" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1)-(4).

1

I.  **FACTUAL AND PROCEDURAL HISTORY**

To expedite these proceedings, the parties submitted a joint stipulation of facts prior to moving for summary judgment. (ECF No. 27). Accordingly, all facts necessary to the disposition of this action have been stipulated too or are otherwise uncontested.

The SEC is the South Carolina executive branch agency generally responsible for administering elections within South Carolina. S.C. Code Ann. §§ 7-3-10, *et. seq.*[2] PILF is a nonprofit organization which is neither incorporated in South Carolina, nor is it a qualified elector in South Carolina. PILF describes itself as a "public interest law firm dedicated to election integrity" which "protects the right to vote and preserves the Constitutional framework of American elections through litigation, investigation, research, and education." *See* Mission & Impact, Public Interest Legal Foundation, (accessed September 17, 2024) https://publicinterestlegal.org/about/.

On February 5, 2024, PILF sent a letter to the SEC requesting, pursuant to the NVRA, that the SEC reproduce or provide PILF the opportunity to inspect "[a] current or most updated copy of the South Carolina statewide voter registration list as described in S.C. Code § 7-5-186."

---

[2] Howard Knapp is the executive Director of the SEC. Because he has been named only in his official capacity, the court will refer to the defendant as the SEC.

Relevant here, Section 8 of the NVRA prescribes requirements with respect to state administration of voter registration for federal elections. 52 U.S.C. § 20507[3]. Section 8(i)(1), titled "Public disclosure of voter registration activities," provides:

> Each State shall maintain for at least 2 years and *shall make available for public inspection* and, where available, photocopying at a reasonable cost, *all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1)(emphasis added).

The SEC responded on February 20, 2024, with a letter denying PILF's requested records and explaining that the Statewide Voter Registration List[4] ("SVRL") was available for a fee but only to qualified electors in South Carolina, and that the Executive Director "does not have the discretion to abrogate S.C. Code § 7-3-20(D)(13) …." S.C. Code Ann. § 7-3-20(D)(13), requires the SEC to "furnish at reasonable price any precinct lists to a qualified elector requesting them." The "precinct lists" are the Statewide Voter Registration Lists at issue in this litigation.

---

[3] The NVRA is codified as amended at 52 U.S.C. §§ 20501–20511. Section 20507 is commonly referred to as "Section 8" of the NVRA, because the provision first appeared as Section 8 when the NVRA was enacted. *See* National Voter Registration Act of 1993, Pub.L. No. 103–31, § 8, 107 Stat. 77 (1993); *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 786 (W.D. Tex. 2015).

[4] Throughout briefing, the parties use various terms when referencing the document PILF requested including "Voter File," "Voter List," and "Statewide Voter Registration List." The Court will utilize the term "Statewide Voter Registration List" as that is the term utilized by the parties within the stipulation of facts. (ECF No. 27, ¶ 1).

3

Unsatisfied with the response, PILF emailed the SEC to state that PILF was serving statutory notice pursuant to 52 U.S.C. § 20510(b)(1) that the SEC was in violation of the NVRA for failure to permit inspection and reproduction of the Statewide Voter Registration List. The instant declaratory judgment action followed.[5]

Pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901, *et seq.*, the SEC adopted the final South Carolina State Plan ("HAVA Plan") in 2006. The SEC developed and maintains a computerized Statewide Voter Registration List ("Computerized Registration List") pursuant to the requirements of HAVA, section 303.

As required by HAVA, South Carolina, through the SEC, currently maintains a single, uniform, official, centralized interactive computerized statewide voter registration system ("Computerized Registration System"). State and local election officials refer to the Computerized Registration System as VREMS (the Voter Registration and Election Maintenance System). Additions and changes required to maintain the accuracy of the Computerized Registration List are made by the County Boards of Voter Registration and Elections ("CBVRE") and the SEC to the voter registration file. The system is interactive.

The Computerized Registration List is the official voter registration list for the conduct of all elections in the State of South Carolina and represents the accurate list of registered voters in South Carolina as authorized under the South Carolina HAVA Plan.[6]

---

[5] Prior to PILF filing this action, the SEC filed its own declaratory judgment action in state court. That action was subsequently removed to federal court and then dismissed without prejudice by stipulation of all parties to allow the issues to proceed in the instant action.

[6] To be clear, the Statewide Voter Registration List at issue in this case should not be confused with the Computerized Registration List, the Computerized Registration System, or VREMS. The Statewide Voter Registration List is a report that is generated from VREMS. Whereas the VREMS

4

The information contained in the Statewide Voter Registration List can be created based on a combination of information from the Computerized Voter Registration List which includes information such as county, voting district, age, sex, race, etc. South Carolina registered voters may purchase a copy of the Statewide Voter Registration List maintained in the Computerized Registration System subject to certain limitations. For instance, the SEC charges a fee for purchasing the Statewide Voter Registration List and redacts Social Security Numbers. Additionally, recipients of the list are prohibited from using the information for commercial solicitation.[7]

The SEC claims that it does not use the Statewide Voter Registration List to ensure the accuracy or currency of the official list of eligible voters; to perform any responsibilities related to list maintenance; or to perform any responsibilities related to voter registration. Instead, the only reason the SEC ever generates the Statewide Voter Registration List is in order to provide it to a qualified elector who requests one under S.C. Code Ann. § 7-3-20(D)(13).

The SEC's list maintenance duties necessary to comply with Section 8 of the NVRA are principally set forth in S.C. Code Ann. § 7-5-340. S.C. Code Ann. § 7-5-340(A)(3) describes the SEC's general program to remove ineligible voters required by the NVRA. For instance, under numerous statutes, the SEC receives data necessary to carry out its list

---

system itself is a database that contains a vast amount of other voter information that is not included on the Statewide Voter Registration List.

[7] PILF has represented that it stands ready to pay the requisite fee, will agree to the redaction of Social Security Numbers, and will not utilize information for commercial solicitation purposes.

maintenance duties including reports of deaths, felony convictions, and declarations of mental incapacity.

Within this action, PILF seeks a declaration that the Statewide Voter Registration List must be produced pursuant to the disclosure mandate of the NVRA and any South Carolina Law preventing such disclosure is preempted. Conversely, the SEC contends that the Statewide Voter Registration List does not fall within the disclosure mandates of Section 8(i)(1) of the NVRA and, even assuming that the Statewide Voter Registration List is encompassed within Section 8(i)(1), the NVRA does not preempt certain state statutes pertaining to the receipt and use of the Statewide Voter Registration List.

## II.     LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R.

Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

### III.  DISCUSSION

At base, the Court faces two questions in determining the outcome of this action: (1) whether the Statewide Voter Registration List falls within the disclosure mandate of the NVRA; and (2) if so, is the South Carolina law preventing disclosure to PILF preempted by the NVRA pursuant to the Supremacy Clause.

#### a. Disclosure Mandate

For its part, PILF argues that the analysis regarding the disclosure mandate's applicability begins and ends with a look at the plain language of the statute. "The starting point for any issue of statutory interpretation is of course the language of the statute itself." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012) "[W]hen the words of a statute are unambiguous, ... this first canon is also the last [and] judicial inquiry is complete." *Willenbring v. United States*, 559 F.3d 225, 235 (4th Cir.2009) (internal quotation marks omitted). PILF avers that the NVRA mandates disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of

7

eligible voters." 52 U.S.C. § 20507(i)(1). Because the SVRL is a record concerning the official list of eligible South Carolina voters, it falls within the NVRA's purview. Continuing on, PILF contends that, given the Supremacy Clause, the NVRA controls over any state statute to the contrary. Accordingly, the SEC's reliance on a state statutory disclosure exception is misplaced.

Conversely, the SEC argues that it does not utilize the SVRL for maintaining an accurate register of South Carolina voters and therefore it is not a record contemplated for production by the NVRA. Even if it were, the SEC asserts preemption is not applicable here.

At first glance, it appears axiomatic that the most current list of eligible voters prepared by the SEC is a document encompassed within the group of "all records concerning" the "currency of official lists of eligible voters." However, the SEC argues that the list is not utilized for ensuring accuracy and currency. In fact, the SEC states that it does not use the SVRL at all. Instead, the SEC explains that the SVRL is merely a summary of numerous other records and reports, gathered from various sources, that are themselves used to confirm accuracy and otherwise maintain the list. Thus, the SVRL is merely a document produced upon request to allow the SEC to maintain compliance with other South Carolina reporting requirements. The Court disagrees.

The SEC's posited classification of the SVRL looks past the plain language of the NVRA. Put simply, the NVRA is a broad statute which covers all records "concerning" efforts made to maintain an accurate and current list of eligible voters. How then, can a report which identifies the most updated list of eligible South Carolina voters not be a

record concerning the efforts made to ensure an accurate and current list of voters? To be fair, the SVRL is properly classified as an output of all other records or reports which the SEC utilizes to add and remove voters for various reasons such as death or felony conviction. These maintenance activities are conducted via VREMS which serves as the single system for storing and managing the official list of registered voters throughout the state. But the fact that the list is an output or summary of the input records does not somehow mean it is any less "concerning" of maintenance efforts. Stated differently, the SVRL represents the end-product of the State's list maintenance activities. Thus, the SVRL concerns those maintenance activities.

The weight of authority surrounding the NVRA supports this conclusion. In *Project Vote*, the Fourth Circuit held that, Section 8(i)(1) of the NVRA, which again requires public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," [52 U.S.C. § 20501], applies to completed voter registration applications. *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 332–33 (4th Cir. 2012). The court emphasized that the use of the word "all" as a modifier, when mandating disclosure of "all records" "suggests an expansive meaning because 'all' is a term of great breadth." *Id.* at 336. Thus, the "phrase 'all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' unmistakably encompasses completed voter registration applications." *Id.* While the SEC is correct that *Project Vote* did not involve precisely the same documents requested by PILF, the Fourth Circuit

9

opinion leaves little, if any, doubt that the NVRA applies equally to the records sought here.

Further bolstering this conclusion is a First Circuit decision, *Legal Found., Inc. v Bellows*, 92 F.4th 36, 46 (1st Cir 2024), which does concern the same records at issue here. There, a party sought disclosure of Maine's "Voter File" which is a list of each registered eligible voter along with various data points associated with that voter such as name, residence, year of birth, enrollment status etc. Much like the SVRL at issue here:

> The Voter File is an electronic report generated from the CVR, the database through which Maine carries out its voter list registration and maintenance activities. The Voter File captures voter record and voter participation history information from the CVR on eligible Maine voters as of the date the Voter File is generated. Accordingly, as of the date it is generated, the Voter File reflects the additions and changes made by Maine election officials in the CVR pursuant to federal and state law as part of Maine's voter list registration and maintenance activities. The Voter File can thus be characterized as the output and end result of such activities. In this way, the Voter File plainly relates to the carrying out of Maine's voter list registration and maintenance activities and is thereby subject to disclosure under Section 8(i)(1).

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024).

Likewise, the SVRL is a list generated from the electronic reporting system which shows the current status of eligible South Carolina voters and thus concerns list registration and maintenance activities. Stated differently, the activity of inputting voter registration information into the VREMS is conducted to ensure that South Carolina is keeping an accurate and current account of its official lists of eligible voters as those citizens register to vote. Similarly, the activities of updating voters' already-existing information in the VREMS and removing ineligible voters from the list are conducted

10

to ensure that South Carolina is keeping an accurate and current account of its official lists of eligible voters as those voters move, die, or otherwise change their personal information. The SVRL is a reflection of these continuous maintenance and accuracy efforts and therefore concerns the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.[8]

Because a reading of the plain language of the statute reveals no ambiguities and points to the clear conclusion that the SVRL concerns the SEC's list maintenance activities and is therefore subject to disclosure under the NVRA, no further discussion regarding congressional intent is necessary.

**b. Preemption**

The SEC denied PILF access to the SVRL citing S.C. Code § 7-3-20(D)(13), which provides any South Carolina registered voter the ability to purchase a copy of the Statewide Voter Registration List. PILF contends that South Carolina's access limitations are preempted, superseded, and unenforceable under Article VI, Clause 2 of

---

[8] PILF also cites to a litany of other district courts which have ruled that the list of eligible voters and their associated data is covered by the disclosure obligations of the NVRA. *See Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 941 (C.D. Ill. 2022)(concluding that, "the phrase 'all records,' as used in the Public Disclosure Provision, necessarily includes the statewide voter registration list"); *Pub. Int. Legal Found., Inc. v. Bellows,* 588 F. Supp. 3d 124, 133 (D. Me. 2022)(concluding that "the Voter File is a 'record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' within the meaning of the Public Disclosure Provision and thus is subject to disclosure under the NVRA"); *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-42 (D. Md. 2019)(concluding that a voter list is a "record" which is subject to disclosure under the NVRA's Public Inspection Provision); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) (concluding that, "the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision," and that, therefore, "[t]he process of compiling, maintaining, and reviewing the voter roll is a program or activity performed by Mississippi election officials that ensures the official roll is properly maintained to be accurate and current").

the United States Constitution (the Supremacy Clause), Article I, Section 4, Clause I of the United States Constitution (the Elections Clause), and the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013). This Court agrees.

Although there are three generally recognized categories of preemption—express preemption, field preemption, and conflict preemption—the parties appear to agree that conflict preemption is the most applicable here. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) ("Federal law may preempt state law under the Supremacy Clause in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'"). Obstacle preemption is a type of conflict preemption. *Sara Lee Corp.*, 508 F.3d at 191-92. It applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Typically, obstacle preemption arises when a state law "interferes with the methods by which the federal statute was designed to reach [its] goal." *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 829-30 (4th Cir. 2010) (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103, (1992)). Obstacle preemption "requires the court independently to consider national interests and their putative conflict with state interests," and so "is more an exercise of policy choices by a court than strict statutory construction." *Columbia Venture, LLC*, 604 F.3d at 830 (quoting *Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1113 (4th Cir. 1988)).

"[S]tate law is naturally preempted to the extent of any conflict with a federal statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), because the

Supremacy Clause of the Constitution, U.S. CONST. art. VI, cl. 2, provides that a federal enactment is superior to a state law. As a result, pursuant to the Supremacy Clause, "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted).

When determining whether preemption is appropriate, the court must first look to congressional intent. *Cox v. Duke Energy, Inc.*, 876 F.3d 625, 635 (4th Cir. 2017)("Federal preemption of state law under the Supremacy Clause—including state causes of action—is fundamentally a question of congressional intent.")(cleaned up). Congress manifests its intent in three ways: (1) when Congress explicitly defines the extent to which its enactment preempts state law (express preemption); (2) when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively" (field preemption); and (3) when state law "actually conflicts with federal law" (conflict or impossibility preemption). *English. v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

Generally, a court presumes that Congress did not intend to preempt state law unless it was Congress's clear purpose to do so. *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). However, that presumption does not apply to Elections Clause legislation, such as the NVRA. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 13, (2013). This view is predicated on the text of the Elections Clause, U.S. Const. Art. I, § 4, cl. 1, which provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except

13

as to the places of chusing Senators."

The Elections Clause "empowers Congress to 'make or alter' state election regulations[,]" and therefore the "assumption that Congress is reluctant to pre-empt does not hold when Congress acts" under that Clause. *Inter Tribal*, 570 U.S. at 14; *see Harkless v. Brunner*, 545 F.3d 445, 455 (6th Cir. 2008) (The rule "that Congress must be explicit when it encroaches in areas traditionally within a state's core governmental functions [ ] does not apply when Congress acts under the Elections Clause, as it did in enacting the NVRA") (citations omitted). Instead, when considering Elections Clause legislation, "the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Inter Tribal*, 570 U.S. at 14.

Congress expressly stated that the NVRA has four purposes: to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office"; to "enhance[ ] the participation of eligible citizens as voters in elections for Federal office"; "to protect the integrity of the electoral process"; and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1)-(4). Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to "assist the identification of both error and fraud in the preparation and maintenance of voter rolls." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). But S.C. Code Ann. § 7-3-20(D)(13) limits that disclosure to South Carolina voters, thereby excluding organizations and citizens of other states from identifying error and fraud.

South Carolina's prohibition on distribution of the SVRL to only eligible South

Carolina voters conflicts with the NVRA's mandate that all records concerning maintenance and accuracy activities be made available for "public inspection." Because adherence to South Carolina law would frustrate application of the Federal mandate, the state law must yield. *Project Vote/Voting For Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011), aff'd and remanded, 682 F.3d 331 (4th Cir. 2012) ("Furthermore, to the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA."); *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 445 (D. Md. 2019) ("By excluding these organizations from access to voter registration lists, the State law undermines Section 8(i)'s efficacy. Accordingly, E.L. § 3-506(a) is an obstacle to the accomplishment of the NVRA's purposes. It follows that the State law is preempted in so far as it allows only Maryland registered voters to access voter registration lists.").

Because the NVRA was established pursuant to the Elections Clause, the Court must assume that the statutory text accurately communicates the scope of Congress's pre-emptive intent. As explained above, the disclosure mandate within the NVRA covers the SVRL. Accordingly, Congress intended that the SVRL be provided for "public inspection." S.C. Code § 7-3-20(D)(13) attempts to limit this disclosure. Because South Carolina's statutes prevent compliance with the plain language mandates of the NVRA, they are preempted.

## IV.   CONCLUSION

For the reasons discussed above, the court grants PILF's motion for summary

15

judgment (ECF No. 28) and denies the SEC's motions for summary judgment (ECF No. 29). Accordingly, the Court declares that the South Carolina Statewide Voter Registration List is a record subject to inspection pursuant to the NVRA, and that the NVRA preempts any South Carolina law limiting access to the Statewide Voter Registration List to South Carolina registered voters.

IT IS SO ORDERED.

September 18, 2024
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge