```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
                       COLUMBIA DIVISION
                  CASE NO.  3:24-CV-01276-JFA

PUBLIC INTEREST LEGAL                    SEPTEMBER 16, 2024
FOUNDATION, INC.,                        12:46 p.m.
                                         Columbia, SC
                         Plaintiff,

         vs.

HOWARD M. KNAPP, in his
official capacity as Executive
Director of the South Carolina
Election Commission,

                      Defendant.         PAGES 1 THROUGH 27
_____

                    HEARING ON MOTIONS
         BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:      Mr. John Christian Adams, Esq.
                        Ms. Maureen Shawn Riordann, Esq.
                        Mr. Noel Henry Johnson, Esq.
                        Mr. Joseph Nixon, Esq.
                        Mr. Samuel Swanson, Esq.
                        PUBLIC INTEREST LEGAL FOUNDATION
                        107 S. West Street, Suite 700
                        Alexandria, VA 22314

                        Mr. Richard L. Bolen, Esq.
                        BOLEN LAW FIRM
                        100 Old Cherokee Road, Suite F345
                        Lexington, SC 29072


FOR THE DEFENDANT:      Mr. Michael Reid Burchstead, Esq.
                        Mr. Tracey Colton Green, Esq.
                        Ms. Mary Elizabeth Crum, Esq.
                        Mr. Benjamin Roper Jenkins, IV, Esq.
                        BURR & FORMAN (Cola)
                        1221 Main Street, Suite 1800
                        Columbia, SC 2920

              (Appearances continue on next page)
```

APPEARANCES (cont'd):


FOR THE DEFENDANT:      Mr. Thomas Wells Nicholson, Esq.
                        SOUTH CAROLINA STATE ELECTION COMMISSION
                        1122 Lady Street
                        Suite 500
                        Columbia, SC 29201


STENOGRAPHICALLY        Ms. Carly L. Horenkamp, RDR, CRR, CRC
REPORTED BY:            Official Court Reporter
                        U.S. DISTRICT COURT
                        901 Richland Street
                        Columbia, SC 29201
                        954.557.5504

1     (Open Court, 12:46 p.m.)

2          THE COURT:  Good morning.  Please be seated.

3          All right.  We're here this afternoon, I guess I

4     should say, in the case of Public Interest Legal Foundation,

5     Incorporated against Howard Knapp, in his official capacity as

6     Executive Director of the South Carolina State Election

7     Commission.

8          The procedural history of this case can be simply

9     stated.  Initially, the State Election Commission filed a

10    lawsuit first in state court that was removed to federal court

11    on the basis of federal question jurisdiction.  Then, the

12    present action by the public interest group, Public Interest

13    Legal Foundation, was filed, presenting the exact same issue.

14    And by agreement of the parties, the companion case, the

15    removed case, was dismissed without prejudice and the parties

16    have gone forward on the case filed by the Public Interest

17    Legal Foundation.

18          Both parties have moved for summary judgment.  The

19    facts are stipulated and so the case presents a pure question

20    of state law -- federal law, rather, which is the preemption.

21    The parties dispute whether conflict preemption should come

22    into play where we have a state statute and a federal statute

23    that arguably conflict with each other.  We'll leave it to the

24    lawyers to take it from there.

25          We try to come to the law school periodically when we

12:48  1    have good cases with good issues, sharp issues, and good

2    lawyers on both sides, and that is the case here.  Most of the

3    lawyers who will be appearing this afternoon are graduates of

4    this law school and I'm looking forward to hearing from them.

5         This is a federal court session.  I think you've been

6    told we cannot record or photograph the proceedings.

7         For the students who are here, if you have a class

8    that will necessitate your leaving early, you may come and go

9    at your pleasure, you do not have to wait until we recess to

10    leave the room, so please don't miss class on our account.

11         Last spring we had a hearing here at the law school,

12    and, interestingly, it also involved an election law dispute,

13    and we're back here with another one, and some of the same

14    cast of characters are here before us as well, I believe.  I

15    see some faces we saw back in the spring.

16         So at this time we're going to let the plaintiff,

17    Public Interest Legal Foundation, go first, and for that

18    reason I'll recognize counsel for the plaintiff, Mr. Christian

19    Adams.  Yes, sir, glad to hear from you.

20         MR. ADAMS:  Thank you, Your Honor.  Before I begin, I

21    want to thank the Court, Dean Hubbard, and the administration

22    for the privilege of arguing in my alma mater.  I can tell

23    you, I haven't been here for a while, so this does not look

24    like the law school I went to.  It's quite nice.

25         THE COURT:  Were you in the old building or the

12:49

1    old-old building.

2              MR. ADAMS:  Not the old-old, but the 1974 Logan's

3    Run.

4              THE COURT:  Well, that's good.  I had one semester in

5    the old building across from the Russell House and then the

6    rest of the time we were in what was then the new building.

7              MR. ADAMS:  Indeed.

8              THE COURT:  It's much nicer now.

9              MR. ADAMS:  So thank you for having us today.

10             May it please the Court.  The plaintiff is asking for

11   summary judgment to be entered against the South Carolina

12   Election Commission.  The case today presents two issues in

13   our view:

14             Number one, is the requested election document within

15   the scope of the National Voter Registration Act's public

16   disclosure obligations?  The plain text of the statute passed

17   by Congress says the answer is yes.

18             The second issue is preemption.  If so, did Congress

19   preempt any state law that restricts rights under Section 8 of

20   NVRA, as the statute here, South Carolina Code 7-3-20(D)(13)

21   does?  Again, the answer is yes because of the Elections

22   Clause of the Constitution, which makes laws passed by

23   Congress relating to time, place, and manners of holding

24   federal elections preempted by any state law and conflict.

25             Now, Your Honor, the Fourth Circuit case of *Project*

12:50
1  *Vote v. Long* and the U.S. Supreme Court case of *Arizona versus*
2  *Inter Tribal Council* controls the outcome on both questions.
3          First, the statutory one.  *Project Vote v. Long* makes
4  it clear that all documents -- and that's the word Congress
5  used -- all documents concerning list maintenance, the
6  cleaning of the voter rolls, are subject to public disclosure
7  under 52 U.S.C. 20507(i)(1).  The Fourth Circuit ruled all
8  means all.
9          THE COURT:  "All" is an expansive word.
10         MR. ADAMS:  Correct.  No credible or fair reading of
11  Judge Wilkinson's opinion for the unanimous panel in the
12  Fourth Circuit could possibly entitle the defendants to
13  summary judgment in this case.  The requested documents fall
14  within the plain text of the statute.
15         On the preemption issue, *Arizona Inter Tribal*,
16  Congress said, under the Elections Clause, there is no
17  presumption against preemption under an Elections Clause
18  statute.  That's Justice Scalia, in a 7-2 opinion, Justice
19  Scalia writing, preemption -- there's no presumption against
20  preemption, as the defendants argue here, actually.  They
21  argue there's a presumption against preemption.
22         So I'm going to take up the statutory interpretation
23  issue first, only because it's a threshold question and courts
24  have spent the most time on it, but I'm happy to skip to
25  preemption if you'd like.

12:51

1    THE COURT:  Well, let me jump in and ask you a

2  question.  You might want to tell me to mind my own business,

3  but the state statute authorizes the disclosure of the Voter

4  Registration List to any registered voter in South Carolina.

5  Your organization doesn't fall in that category so you're not

6  entitled to it.  But you could walk out of here on the

7  sidewalk and get the first registered voter who walks by and

8  give him $10 and say, "Go request a Voter Registration List

9  for us," and you could get it.  So you could get it

10  indirectly.

11    But you say that the principle is more important,

12  your organization wants these records, and it's my

13  understanding you've taken similar positions around the

14  country with other states.  Is that correct?

15    MR. ADAMS:  Correct, and -- and if that's the end of

16  your question?

17    THE COURT:  Yes.

18    MR. ADAMS:  The uniform waive authority, Your Honor,

19  there's no case that has ever ruled in favor of the defendants

20  in this case, whether it's the First Circuit out of a case

21  involving the District Court in Maine, whether it's the Fourth

22  Circuit, whether it's the District Court of Illinois, the

23  District Court in Maryland.

24    Indeed, we could do as you suggest, we could walk and

25  get somebody else or maybe one of the students to get this for

12:52  1    us, but, number one, that isn't what Congress intended or

2    wrote in the plain text of the statute.  It said anybody can

3    do it.  It doesn't say only registered voters in South

4    Carolina.  In fact, that's what makes the South Carolina law

5    more extreme -- more extreme than the one that was struck down

6    by the District Court in Maine and affirmed by the First

7    Circuit Court of Appeals.  In Maine, all you had to do is

8    agree not to do certain things with it, but everyone could ask

9    for the record and get it.

10         In South Carolina, there's a whole class of people

11   that are excluded from getting records Congress said they

12   should get.  Ironically, the plaintiff in *Project Vote v. Long*

13   would be excluded from getting the records because they

14   weren't allowed to be registered to vote.  So the plaintiff in

15   *Project Vote v. Long*, the exact sort of person that was

16   supposed to benefit from the statute, would have been

17   prohibited from getting the records because they were not

18   allowed to register to vote.  Some students from Hampton

19   University, a historically black college in Virginia, were not

20   allowed to register, and they asked for these records, the

21   records under the Motor Voter law, and Virginia denied them,

22   and Virginia made the exact same arguments the defendants here

23   are now making.

24         THE COURT:  Right.  As you just point out, the

25   provision at issue here is part of the so-called Motor Voter

12:54    1    law passed by Congress a couple of decades ago, which was

2    designed to encourage people to register to vote by making it

3    possible to register when you registered your car, registered

4    your vehicle, but to put this disputed language in, and,

5    interestingly, they did not mention voter registration

6    records, per se, they said all records concerning the currency

7    of official list of registered voters, records that show how

8    accurate the voter registration list is.

9        And what you want here is not the records that ensure

10    accuracy, but you want the final product, that is, the Voter

11    Registration List itself.

12        MR. ADAMS:  Well, the first --

13        THE COURT:  You say the words "concerning all," "all"

14    and "concerning" are expansive words and that's the linchpin

15    of your argument, I guess.

16        MR. ADAMS:  That's what the Fourth Circuit ruled in

17    *Project Vote v. Long*, that "all" is an expansive term.  The

18    First Circuit, using *Project Vote*, the First Circuit last fall

19    ruled that a Voter List is within the purview of Section 8 of

20    the Motor Voter law.

21        Now, I would submit, Your Honor, that Judge

22    Wilkinson, in the Fourth Circuit opinion, went into some

23    detail about this at 339 in *Project Vote v. Long*, and he

24    actually talked about the Voter List.  He said -- he wrote,

25    for the panel, unanimous panel:  State officials labor under a

12:55   1    duty of accountability to the public in ensuring that the

2    Voter List include eligible voters and exclude ineligible ones

3    in the most accurate manner possible.

4          So Judge Wilkinson was already touching on this

5    issue, even though the issue in *Project Vote v. Long*, as the

6    defendants are quick to point out, didn't involve Voter Lists,

7    but in fact he was talking about Voter Lists in the opinion

8    also.

9          THE COURT:  Right.  And as you point out, the three

10    types of preemption that have been recognized over the years,

11    express preemption, whether federal statute expressly declares

12    that it will take precedence over conflicting state law; field

13    preemption, where Congress decides to occupy an entire field,

14    such as ERISA, the Employee Retirement Income Security Act,

15    where they want to supplant all state law across the board;

16    and then what we're dealing with here, conflict preemption,

17    where there's an apparent conflict between the state statute

18    and the federal statute; and then I learned a new term,

19    conflict preemption, which is a subset of conflict preemption,

20    where the -- I'm sorry, obstacle preemption, which is a subset

21    of conflict preemption, and that's what you're relying on

22    here.

23          MR. ADAMS:  Right.  And the defendants are flat wrong

24    when they argue that other forms of preemption apply here

25    besides conflict, and they're also flat wrong when they argue

12:56  1    there's a presumption against preemption.  They want the Court

2    to think that we have to do a balancing test.

3                THE COURT:  Well, as you point out, generally

4    speaking, there's a presumption against preemption of a

5    federal -- by a federal statute.  But, here, the statute was

6    passed pursuant to the Elections Clause of the Constitution

7    and you say that erases the presumption.

8                MR. ADAMS:  Here's why, Your Honor, and this is

9    important maybe not only for this case, but for the students,

10   Federalist 59 talked about why we had an Elections Clause, and

11   the founders put it into the Constitution because they were

12   scared that the federal government would be snuffed out by the

13   states --

14               THE COURT:  And just to be --

15               MR. ADAMS:  -- that there would not be an election.

16               THE COURT:  Just to be clear, the Elections Clause to

17   which you refer, the Constitution provides that "The Times,

18   Places, and Manner of holding elections for senators and

19   representatives shall be prescribed in each State by the

20   legislature thereof; but Congress may, at any time, by law,

21   make or alter Such Regulations, except as to the Places of

22   choosing senators."

23               MR. ADAMS:  That's the Elections Clause.

24               THE COURT:  That's the Elections Clause.

25               MR. ADAMS:  Right.  And under the Elections Clause,

12:57  1    Your Honor, there is no presumption against preemption.

2    Justice Scalia wrote that, in *Arizona Inter Tribal*, that

3    Congress, when they act in this area, they are supreme.

4    Because, like I said, the founders wanted to have something in

5    the Constitution that ensured the survival of the federal

6    government, that Congress could always step in, and if South

7    Carolina wasn't going to hold an election, the founders wanted

8    Congress to be able to decide how that election is held.

9    That's the preemption we're operating under in this case.  And

10    that's why the defendants have been squeezed out of their

11    arguments that there is no presumption against preemption.  So

12    that's why it sort of shifts back to the threshold question:

13    Does the plain text of the NVRA capture the documents

14    requested?  Because if they do, the preemption issue is really

15    not a close call.

16            THE COURT:  All right.

17            MR. ADAMS:  And, Your Honor, the District Court in

18    Maryland confronted this exact same issue.  The Voter Lists

19    were at issue in *Judicial Watch versus Lamone* and the district

20    court confronted the preemption issues and followed *Arizona*

21    *Inter Tribal* and said the plaintiffs win, they get summary

22    judgment and they get the Voter List.  So I really don't think

23    there's much wiggle room here on the preemption issue for the

24    defendants.

25            I'm not sure if my time is up, but I'm happy to say

12:58    1    it is unless you have --

2                THE COURT:  I think you've covered it.

3                MR. ADAMS:  Okay.

4                THE COURT:  I think you've covered it.  Who is going

5    to speak first for the Election Commission?

6                MR. GREEN:  I will, Your Honor.

7                THE COURT:  All right.

8                MR. GREEN:  It will just be me.

9                THE COURT:  All right.

10               MR. ADAMS:  So, Your Honor, on the statutory

11    interpretation question, every court that has looked at this,

12    every court that has looked at it, the Fourth Circuit -- the

13    Fourth Circuit, in *Public Interest Legal Foundation versus*

14    *North Carolina Board of Elections*, that came after *Project*

15    *Vote v. Long*, reaffirmed the expansive reading of "all," so

16    this was not a fluke when Judge Wilkinson wrote, in *Project*

17    *Vote v. Long*, they had another chance, and Judge Gregory

18    recently, in the last couple of years at least, reaffirmed

19    *Project Vote v. Long* and talked about the expansive reading of

20    the statute.

21               THE COURT:  All right.  Thank you, sir.

22               MR. ADAMS:  Thank you.

23               THE COURT:  All right.  Mr. Green?

24               MR. GREEN:  Thank you, Your Honor.  If you'll bear

25    with me just one moment, please.

12:59  1          THE COURT:  Let me ask, and I should know this, the
       2    Voter List they ask for is just a database, it's not printed
       3    copies, it's not an expensive proposition to produce; is that
       4    correct?
       5          MR. GREEN:  The fee is not inexpensive, I do not
       6    believe.
       7       (Off-the-record discussion.)
       8          MR. GREEN:  $2500.
       9          THE COURT:  $2500 to have access --
      10          MR. GREEN:  So that probably would preclude the
      11    students.
      12          THE COURT:  To have access to the electronic
      13    database.
      14          MR. GREEN:  Yes.
      15          THE COURT:  And you say your hands are tied by this
      16    state law that you are commanded to obey --
      17          MR. GREEN:  That is absolutely correct.
      18          THE COURT:  -- that says you have to be a registered
      19    voter in South Carolina to request this list.
      20          MR. GREEN:  That is absolutely correct, though we
      21    do -- candidly, I'm going to make arguments that may be
      22    against the weight of authority, but we don't believe this is
      23    a covered record under Section 8(i)(1) --
      24          THE COURT:  All right.  Go ahead.
      25          MR. GREEN:  -- of the NVRA.

01:00   1              THE COURT:  Right.

        2              MR. GREEN:  And then I'll address --

        3              THE COURT:  I understand --

        4              MR. GREEN:  -- preemption as well.

        5              THE COURT:  I understand your position that the

        6       statute does not address the end product, that is, the Voter

        7       Registration List itself, it's just the procedures designed to

        8       produce that end product.

        9              MR. GREEN:  That's correct, Your Honor.  I would

       10       liken it -- I really would liken it almost to a manufacturing

       11       process, where you -- where the machines go in together and

       12       then out comes a widget.  The process of manufacturing the

       13       Voter List is what Section 8 of the NVRA is interested in.

       14       It's not the actual Voter List, it's the procedures and

       15       practices, the --

       16              THE COURT:  And Congress presumably was interested in

       17       knowing what states are doing to ensure the accuracy of their

       18       Voter Registration Lists, so that's why they wanted to make

       19       available the procedures and so forth, not the end result.

       20       That's your argument.

       21              MR. GREEN:  That's correct.  The widget is not what

       22       Congress was interested in here.  They were interested in the

       23       procedures that were being implemented.  And I think those

       24       procedures, Your Honor, are set forth in subsection (a) of

       25       what is Section 8, or 52 U.S.C. 20507.  And it says roughly

01:01
1   six things with some subparts that states are required to do

2   in federal elections to make sure that the Voter List is

3   accurate.

4         And with respect to the Proj- -- I'm going to bounce

5   around a little bit, Your Honor.  With respect to the *Project*

6   *Vote* case, I would note that registration applications are

7   addressed in subsection (a) of Section 8, whereas the actual

8   official list of voters, that output, that's not really a

9   thing that is addressed, except and to the extent these

10   procedures are directing to make sure that's accurate.  And I

11   think there's good reason for that, because that list changes

12   all the time as list maintenance activities go on and occur,

13   whereas the question is the procedures.

14         This is not a broad public disclosure statute, Your

15   Honor, we submit, it is a narrowly or moderately narrowly

16   tailored statute to the procedures that are applied to get

17   that list and make it accurate over time.

18         THE COURT:  And I learned in reading your briefs that

19   the Voter Registration List is in a constant state of flux

20   because as people pass away, DHEC notifies your agency to take

21   them off the rolls, and as people are convicted of felonies, I

22   guess the Department of Corrections sends you those names,

23   says take them off, and so forth.  So it's constantly

24   evolving.

25         MR. GREEN:  That is correct.  If a list is printed

01:03
1    out and provided to anyone, that list is obsolete within some
2    reasonably short period of time.  Somebody's gone on to the
3    list probably or come off.  I don't know, I couldn't say what
4    time as I stand here now, but over time, it will not take long
5    before it's changed some.  Somebody's moved in, somebody's
6    moved out, it's going to have changed.
7            And I would submit too, Your Honor --
8            THE COURT:  Well, just out of curiosity, when
9    somebody moves out of the state, how do you find out about
10   that change?
11           MR. GREEN:  If you get a change of address form, for
12   instance, from the post office, or they've not voted for a
13   while -- and this might take some time, but they've not voted
14   for a while, you send a notice, and then they still don't vote
15   for two more, I think I'm remembering that right, then you
16   can --
17           THE COURT:  They're purged after so many missed
18   votes.
19           MR. GREEN:  That's right.
20           THE COURT:  Okay.
21           MR. GREEN:  And that's all set forth.  And that's not
22   really at issue except that it goes to the point which is the
23   list changes over time.
24           Under the interpretation advanced by the plaintiffs,
25   then this is a record we've got to keep all the time because

01:04  1   Section 8 says we've got to maintain it for two years.  But

2   the Voter List changes all the time.  The procedures and stuff

3   that go into that list do not change.  They're sort of

4   consistent as we go in and apply those.

5         So, again, now we come back to that's why *Project*

6   *Vote* doesn't govern this.  It does say all language and

7   concerning broad.

8         THE COURT:  It emphasizes the words "all records

9   concerning," and they say "all" and "concerning" are both

10   broad, expansive terms.  You say they're not broad enough to

11   wrap around what we have here though.

12         MR. GREEN:  Two responses to that.  All records

13   concerning the process, which is what is set forth in the

14   plain language of the statute.

15         And the other thing is --

16         THE COURT:  So the "all" and "concerning" refers to

17   the process --

18         MR. GREEN:  Refers to the process.

19         THE COURT:  -- not the end result.  Not the end

20   result.

21         MR. GREEN:  I think you've got to read Section 8 in

22   context, and Section 8 is talking about the procedures that

23   must be applied, the programs and activities that must be

24   applied, which we submit is set forth in subsection (a) of

25   that statute.  And, again, those would cut off -- those are

01:05   1    the procedures, that's not the list itself.  The list is

2    surely the end result, no question about that, but that's not

3    what we submit Section 8 is talking about.

4        Again, Section 8 is not a broad disclosure statute,

5    it's got a narrow purpose, a targeted purpose, which is the

6    procedures that states must follow.

7        Let's see what I need to cover.  I think I've covered

8    all those points with respect to, we don't even think we get

9    there because it's covered.  And, again, I acknowledge that

10   there are a lot of -- to the extent they've addressed this

11   issue or others, there are plenty of decisions in nonbinding

12   areas that go in favor of the plaintiff, but we submit those

13   aren't supported by a proper textual reading of the statute in

14   context.

15       Assuming that the Court disagrees with us, however,

16   and decides that it needs to reach preemption, I think, under

17   *Inter Tribal*, it is correct, we're dealing with the Elections

18   Clause.  I think that is accurate.

19       THE COURT:  And you agree there's normally a

20   presumption against federal preemption, but that kind of melts

21   away when a statute is passed under the Elections Clause.

22       MR. GREEN:  I agree that there is not the same

23   presumption, but I would submit, under *Inter Tribal*, and,

24   really, there's a case *Seybold* (ph) we cited in our brief, you

25   try to read -- under the Elections Clause, the state can adopt

01:06   1   a system -- it must adopt a system of regulations governing at

2   least the time, place, and manner of federal elections.

3   Congress can displace that if it chooses. But to the extent

4   the Court can, you should try to read those programs together

5   so that the two regulatory schemes, federal and state, operate

6   as one.

7          So conflict or obstacle preemption comes into play to

8   the extent you're trying to decide if what Congress has

9   enacted displaces the state statute. And we submit that's not

10   the case here. That what Section 8 does, does not displace

11   the state statute that we're talking about with respect to

12   restricting access to Voter Lists to qualified electors

13   because that is a state regulation governing the publication

14   of that information and those two can function together.

15   Public disclosure is advanced by limiting availability of

16   those records to South Carolina voters who have the greatest

17   interest in ensuring that the Voter List is accurate.

18          There's no -- we note, and again, it is -- we are

19   talking about the language, but you're trying to see what

20   Congress did intend, there's no indication in the state

21   legislative history, and we talk about this in our brief,

22   there's no indication in the legislative history that Congress

23   expected disclosure as serving as a significant objective or a

24   primary objective of the NVRA. What the NVRA, in Section 8

25   that is before you, Your Honor, is focused on is the

01:08   1   procedures that the state must follow in list maintenance.

2        We think, viewed in that light, then, Section -- the

3   state statute 7-3-20(D)(13) is not preempted by Section 8(i)

4   and can operate alongside of it as part of a single

5   comprehensive federal and state regulatory scheme.

6        We would note that Section 7-3-20(D)(13) preexisted

7   the enactment of the National Voter Registration Act and was

8   in fact recodified as part of the settlement discussions

9   pertaining to *Condon v. Reno* in I guess the mid to late 1990s.

10        And then finally I would note, we set this forth in

11   our reply and surreply, there's some provisions about a

12   reasonable fee in (D)(13), PILF agreed to pay those, I

13   believe.

14        There are two statutes on disclosures against --

15   state statutes against disclosure of a voter's Social Security

16   number.  I believe PILF has agreed to the redaction of any

17   Social Security numbers that might be accurate.

18        And then there is a prohibition against using the --

19        THE COURT:  That's correct, Mr. Adams, you agree to

20   redact Social Security numbers.

21        MR. ADAMS:  Absolutely.

22        THE COURT:  All right.

23        MR. GREEN:  And then the prohibition against

24   commercial solicitation --

25        THE COURT:  Right.

01:09

1    MR. GREEN:  -- and I don't think they've challenged

2  that as well.

3    THE COURT:  Right.  But do you concede that this

4  First Circuit case of *Legal Fund versus Bellows* is on all

5  fours with what we have here?  It's not binding on me

6  obviously --

7    MR. GREEN:  Yes, sir.

8    THE COURT:  -- but --

9    MR. GREEN:  No, it reaches a same -- a different

10  result on very similar facts.  Their state statute is a little

11  different than ours, which doesn't allow you to publish it on

12  the internet, and there were some prohibitions and some

13  provisions regarding enforcement that were issued in that

14  case.  In fact, I listened to the oral argument in that case

15  yesterday and I believe most of the oral argument was about

16  the enforcement stuff.  But yes, Your Honor, that's a long

17  answer to your question.

18    The short answer is, it would be one of the cases

19  that would be going to contrary on very similar facts.

20    THE COURT:  All right.  I appreciate your candor in

21  that respect.

22    MR. GREEN:  Yes, sir.  We just think it was

23  incorrectly decided.  Thank you, Your Honor.

24    THE COURT:  Thank you, sir.

25    All right.  Let's go back to plaintiff.  Let me ask

01:10

1    this.  Obviously this Motor Voter statute, Congress was

2    interested in more people who want to vote being allowed to

3    register with less red tape and so forth and they wanted

4    states to ensure that the records were kept accurately, why

5    didn't Congress just say that the Voter Registration Lists had

6    to be made available?  They used language dancing around the

7    question about procedures to ensure the accuracy of the voter

8    records or the Voter Registration List, but they don't require

9    it, per se, to be disclosed.

10           MR. ADAMS:  I would submit they did something better,

11   they said "all," and so when they said all records concerning

12   list maintenance, that would capture everything.

13           And *Bellows* is squarely on all fours, Your Honor,

14   you're exactly right.

15           THE COURT:  They conceded that.

16           MR. ADAMS:  And I would also submit that *Judicial*

17   *Watch versus Lamone* out of the District Court of Maryland is

18   also on all fours, so there's two.  In the Illinois case we

19   cite, that related to a Voter List.  That related to defenses

20   exactly the sort that you just heard, that this is about the

21   procedures that are disclosable, not the ultimate list.

22           Let me address that briefly.  First of all, you're

23   right, we adopt the end-product argument from *Bellows*.  But

24   let me see you -- let me go even further.  Even if the

25   end-product argument fails, I would submit that the Voter List

01:11

1    is the benchmark for the next round of list maintenance;

2    therefore, making it within Congress's reach.  You have to

3    have the Voter List to do the next list maintenance.  It

4    becomes the benchmark for all the future list maintenance,

5    and, therefore, squarely drawn into the text of the statute.

6    So even if we were wrong, which I submit we're not, on the

7    end-product argument, it's a benchmark and therefore is in.

8            Regarding the purposes, Congress doesn't often tell

9    you what the purposes are so explicitly like they did here,

10   and number 4 in the statute (b)(1) is to ensure accurate and

11   current voter registration rolls are maintained.  So if you

12   look at the explicit purpose that Congress passed, it mentions

13   accurate voter rolls.  So what we're trying to do is squarely

14   within that purpose, Your Honor.  That's all I have.

15           THE COURT:  Thank you, sir.  Let's go back, since we

16   have cross-motions, we had another round of surreply, who

17   wants to speak for the Commission?

18           MR. GREEN:  I'll go, Judge.

19           THE COURT:  All right.  Mr. Green, yes, sir.

20           MR. GREEN:  Very, very briefly, Your Honor.  To

21   follow up on that point, I think there was an easier way to

22   address it.  If they wanted all records at every stage of the

23   process to be released, then there was an easier way to say

24   that.  I think what our position is ties in better with

25   respect to what we're talking about as disclosure under

01:13    1    Section 8.  They may reference the Voter List as the benchmark

2    and going back and forth, but what they're doing is checking

3    continued qualifications to vote, not the Voter List itself.

4    Congress wrote it with respect to the procedures that are

5    being applied.

6         And I would note, there was a reference to the

7    policies in the first statute, policy 4, the Voter List, but I

8    think all that shows is Congress knows how to say Voter List

9    if it wants the Voter List disclosed, Your Honor.  Thank you.

10         THE COURT:  All right.  One final question for the

11    plaintiff.  You conceded Social Security numbers should be

12    redacted.  Do you also concede that there will be no

13    commercial use of the lists?

14         MR. ADAMS:  We concede we have no -- we will not use

15    the list commercially.

16         THE COURT:  All right.  Well, when I first picked up

17    this file, I thought this would be an easy call, but as is

18    usually the case, once I got into the weeds of the case, it

19    didn't appear that clear.

20         But having studied the applicable law and read the

21    briefs and heard the arguments of very able counsel here

22    today, I'm going to grant the motion of the plaintiff for

23    summary judgment, relying primarily on two cases, the *Project*

24    *Vote* case, which was a Fourth Circuit case, a fairly recent

25    Fourth Circuit case, in which the Fourth Circuit, addressing a

01:14    1    different question, did point out that the words "all" and
         2    "concerning" were expansive terms, and then we have this First
         3    Circuit case, *Legal Fund versus Bellows*, which is squarely on
         4    point.  And it is my determination that the state law
         5    prohibition on distribution of the Voter List to only eligible
         6    South Carolina voters conflicts with the National Voter
         7    Registration Act's mandate that all records concerning
         8    maintenance and accuracy of activities be made available for
         9    public inspection.  Because adherence to the South Carolina
        10    law would frustrate application of the federal statute, the
        11    state law must yield.  So for that reason I'm going to grant
        12    the motion.  A written order will follow.
        13         (Proceedings concluded at 1:15 p.m.)
        14                    *   *   *   *   *

```
1    UNITED STATES OF AMERICA                    )
                                                 ) ss:
2    DISTRICT OF SOUTH CAROLINA                  )

3

4                    C E R T I F I C A T E

5        I, Carly L. Horenkamp, Certified Shorthand

6    Reporter in and for the United States District Court for the

7    District of South Carolina, do hereby certify that I was

8    present at and reported in machine shorthand the proceedings

9    had the 16th day of September, 2024, in the above-mentioned

10   court; and that the foregoing transcript is a true, correct,

11   and complete transcript of my stenographic notes.

12       I further certify that this transcript contains

13   pages 1 - 27.

14       IN WITNESS WHEREOF, I have hereunto set my hand at

15   Columbia, South Carolina, this 27th day of September, 2024.

16

17

18                        /s/ Carly Horenkamp
                          Carly L. Horenkamp, RDR, CRR, CRC
19                        Certified Shorthand Reporter

20

21

22

23

24

25
```

MR. ADAMS: [22]
MR. GREEN: [29]
THE COURT: [51]

**$**

$10 [1]  7/8
$2500 [2]

**-**

-- but [1]  22/8

**1**

100 [1]  1/19
107 [1]  1/16
1122 [1]  2/3
1221 [1]  1/23
12:46 [2]
13 [4]
16 [1]  1/3
16th [1]  27/9
1800 [1]  1/23
1974 [1]  5/2
1990s [1]  21/9
1:15 [1]  26/13

**2**

20 [3]
2024 [3]
20507 [2]
22314 [1]  1/17
27 [2]
27th [1]  27/15
29072 [1]  1/19
2920 [1]  1/24
29201 [2]

**3**

339 [1]  9/23
3:24-CV-01276-JFA [1]  1/2

**5**

500 [1]  2/4
52 U.S.C [1]  6/7
52 U.S.C. 20507 [1]  15/25
59 [1]  11/10

**7**

7-2 [1]  6/18
7-3-20 [3]
700 [1]  1/16

**9**

901 [1]  2/7
954.557.5504 [1]  2/8

**A**

able [2]
about [17]
above [1]  27/9
above-mentioned [1]  27/9
absolutely [3]

access [3]
account [1]  4/10
accountability [1]  10/1
accuracy [4]
accurate [10]
accurately [1]  23/4
acknowledge [1]  19/9
across [2]
act [3]
Act's [2]
action [1]  3/12
activities [3]
actual [2]
actually [2]
Adams [3]
address [5]
addressed [3]
addressing [1]  25/25
adherence [1]  26/9
administration [1]  4/21
adopt [3]
advanced [2]
affirmed [1]  8/6
after [2]
afternoon [2]
again [6]
against [15]
agency [1]  16/20
ago [1]  9/1
agree [4]
agreed [2]
agreement [1]  3/14
ahead [1]  14/24
Alexandria [1]  1/17
all [47]
All right [6]
allow [1]  22/11
allowed [4]
alma [1]  4/22
almost [1]  15/10
alongside [1]  21/4
already [1]  10/4
also [6]
alter [1]  11/21
always [1]  12/6
AMERICA [1]  27/1
ANDERSON [1]  1/11
another [3]
answer [4]
any [5]
anybody [1]  8/2
anyone [1]  17/1
apparent [1]  10/17
Appeals [1]  8/7
appear [1]  25/19
APPEARANCES [3]
appearing [1]  4/3
applicable [1]  25/20
application [1]  26/10
applications [1]  16/6
applied [4]
apply [2]
appreciate [1]  22/20

are [30]
area [1]  12/3
areas [1]  19/12
aren't [1]  19/13
arguably [1]  3/23
argue [4]
arguing [1]  4/22
argument [7]
arguments [4]
Arizona [4]
Arizona Inter [1]  6/15
around [4]
as [27]
ask [5]
asked [1]  8/20
asking [1]  5/10
Assuming [1]  19/15
at [17]
authority [2]
authorizes [1]  7/3
availability [1]  20/15
available [3]
away [2]

**B**

back [7]
balancing [1]  11/2
basis [1]  3/11
be [27]
bear [1]  13/24
because [13]
becomes [1]  24/4
been [5]
before [5]
begin [1]  4/20
being [3]
believe [6]
Bellows [4]
benchmark [4]
benefit [1]  8/16
Benjamin [1]  1/22
besides [1]  10/25
better [2]
between [1]  10/17
binding [1]  22/5
bit [1]  16/5
black [1]  8/19
board [2]
Bolen [2]
both [4]
bounce [1]  16/4
brief [2]
briefly [2]
briefs [2]
broad [5]
building [4]
Burchstead [1]  1/21
BURR [1]  1/23
business [1]  7/2
but [33]

**C**

call [2]
called [1]  8/25
came [1]  13/14

can [9]
candidly [1]  14/21
candor [1]  22/20
cannot [1]  4/6
capacity [2]
capture [2]
car [1]  9/3
Carly [3]
CAROLINA [19]
case [30]
cases [3]
cast [1]  4/14
category [1]  7/5
certain [1]  8/8
Certified [2]
certify [2]
challenged [1]  22/1
chance [1]  13/17
change [3]
changed [2]
changes [3]
characters [1]  4/14
checking [1]  25/2
Cherokee [1]  1/19
chooses [1]  20/3
choosing [1]  11/22
Christian [2]
Circuit [17]
cite [1]  23/19
cited [1]  19/24
class [3]
Clause [12]
cleaning [1]  6/6
clear [3]
close [1]  12/15
Code [1]  5/20
Cola [1]  1/23
college [1]  8/19
Colton [1]  1/21
COLUMBIA [6]
come [5]
comes [2]
commanded [1]  14/16
commercial [2]
commercially [1]  25/15
Commission [7]
companion [1]  3/14
complete [1]  27/11
comprehensive [1]  21/5
concede [3]
conceded [2]
concerning [12]
concluded [1]  26/13
Condon [1]  21/9
Condon v [1]  21/9
conflict [10]
conflicting [1]  10/12
conflicts [1]  26/6
confronted [2]
Congress [25]
Congress's [1]  24/2
consistent [1]  18/4

constant [1]  16/19
constantly [1]  16/23
Constitution [5]
cont'd [1]  2/1
contains [1]  27/12
context [2]
continue [1]  1/25
continued [1]  25/3
contrary [1]  22/19
controls [1]  6/2
convicted [1]  16/21
copies [1]  14/3
correct [12]
Corrections [1]  16/22
could [8]
couldn't [1]  17/3
Council [1]  6/2
counsel [2]
country [1]  7/14
couple [2]
court [25]
courts [1]  6/23
cover [1]  19/7
covered [5]
CRC [2]
credible [1]  6/10
cross [1]  24/16
cross-motions [1]  24/16
CRR [2]
Crum [1]  1/22
curiosity [1]  17/8
currency [1]  9/6
current [1]  24/11
cut [1]  18/25
CV [1]  1/2

**D**

dancing [1]  23/6
database [2]
day [2]
dealing [2]
Dean [1]  4/21
decades [1]  9/1
decide [2]
decided [1]  22/23
decides [2]
decisions [1]  19/11
declares [1]  10/11
Defendant [3]
defendants [8]
defenses [1]  23/19
denied [1]  8/21
Department [1]  16/22
designed [2]
detail [1]  9/23
determination [1]  26/4
DHEC [1]  16/20
did [6]
didn't [3]
different [3]
directing [1]  16/10
Director [2]
disagrees [1]  19/15

**D**

disclosable [1] 23/21
disclosed [2]
disclosure [9]
disclosures [1] 21/14
discussion [1] 14/7
discussions [1] 21/8
dismissed [1] 3/15
displace [2]
displaces [1] 20/9
dispute [2]
disputed [1] 9/4
distribution [1] 26/5
district [14]
DIVISION [1] 1/2
do [17]
document [1] 5/14
documents [4]
does [7]
doesn't [5]
doing [2]
don't [8]
down [1] 8/5
drawn [1] 24/5
duty [1] 10/1

**E**

each [2]
early [1] 4/8
easier [2]
easy [1] 25/17
election [11]
elections [17]
electors [1] 20/12
electronic [1] 14/12
eligible [2]
Elizabeth [1] 1/22
else [1] 7/25
emphasizes [1] 18/8
Employee [1] 10/14
enacted [1] 20/9
enactment [1] 21/7
encourage [1] 9/2
end [10]
end-product [3]
enforcement [2]
enough [1] 18/10
ensure [5]
ensured [1] 12/5
ensuring [2]
entered [1] 5/11
entire [1] 10/13
entitle [1] 6/12
entitled [1] 7/6
erases [1] 11/7
ERISA [1] 10/14
Esq [11]
even [5]
ever [1] 7/19
every [3]
everyone [1] 8/8
everything [1] 23/12
evolving [1] 16/24
exact [4]

exactly [2]
except [3]
exclude [1] 10/2
excluded [2]
Executive [2]
expansive [7]
expected [1] 20/23
expensive [1] 14/8
explicit [1] 24/12
explicitly [1] 24/9
express [1] 10/11
expressly [1] 10/11
extent [4]
extreme [2]

**F**

F345 [1] 1/19
faces [1] 4/15
fact [4]
facts [3]
fails [1] 23/25
fair [1] 6/10
fairly [1] 25/24
fall [3]
favor [2]
federal [18]
Federalist [1] 11/10
Federalist 59 [1] 11/10
fee [2]
felonies [1] 16/21
field [2]
file [1] 25/17
filed [3]
final [2]
finally [1] 21/10
find [1] 17/9
FIRM [1] 1/18
first [16]
flat [2]
fluke [1] 13/16
flux [1] 16/19
focused [1] 20/25
follow [4]
followed [1] 12/20
foregoing [1] 27/10
form [1] 17/11
FORMAN [1] 1/23
forms [1] 10/24
forth [9]
forward [2]
FOUNDATION [7]
founders [3]
fours [3]
Fourth [11]
frustrate [1] 26/10
function [1] 20/14
Fund [2]
further [2]
future [1] 24/4

**G**

generally [1] 11/3
get [12]
getting [3]
give [1] 7/8

glad [1] 4/19
go [13]
goes [1] 17/22
going [11]
gone [2]
good [6]
got [5]
govern [1] 18/6
governing [2]
government [2]
graduates [1] 4/3
grant [2]
greatest [1] 20/16
Green [3]
Gregory [1] 13/17
group [1] 3/12
guess [4]

**H**

had [8]
Hampton [1] 8/18
hand [1] 27/14
hands [1] 14/15
happy [2]
has [5]
have [27]
haven't [1] 4/23
having [2]
he [4]
hear [1] 4/19
heard [2]
hearing [3]
held [1] 12/8
Henry [1] 1/14
here [25]
Here's [1] 11/8
hereby [1] 27/7
hereunto [1] 27/14
him [1] 7/8
him $10 [1] 7/8
his [2]
historically [1] 8/19
history [3]
hold [1] 12/7
holding [2]
Honor [22]
HONORABLE [1] 1/11
Horenkamp [1] 5/5
House [1] 5/5
how [4]
HOWARD [2]
however [1] 19/15
Hubbard [1] 4/21

**I**

I'll [3]
I'm [11]
I've [1] 19/7
if [17]
Illinois [2]
implemented [1] 15/23
important [2]
in [96]
INC [1] 1/4
include [1] 10/2

Income [1] 10/14
Incorporated [1] 3/5
incorrectly [1] 22/23
Indeed [2]
indication [2]
indirectly [1] 7/10
ineligible [1] 10/2
inexpensive [1] 14/5
information [1] 20/14
Initially [1] 3/9
inspection [1] 26/9
instance [1] 17/12
intend [1] 20/20
intended [1] 8/1
Inter [6]
Inter Tribal [3]
interest [9]
interested [5]
interestingly [2]
internet [1] 22/12
interpretation [2]
into [7]
involve [1] 10/6
involved [1] 4/12
involving [1] 7/21
Ironically [1] 8/12
is [90]
isn't [1] 8/1
issue [13]
issued [1] 22/13
issues [4]
it [52]
it's [19]
itself [4]
IV [1] 1/22

**J**

Jenkins [1] 1/22
JFA [1] 1/2
John [1] 1/13
Johnson [1] 1/14
JOSEPH [2]
JR [1] 1/11
JUDGE [7]
judgment [5]
Judicial [2]
jump [1] 7/1
jurisdiction [1] 3/11
just [11]
Justice [3]

**K**

keep [1] 17/25
kept [1] 23/4
kind [1] 19/20
KNAPP [2]
know [2]
knowing [1] 15/17
knows [1] 25/8

**L**

labor [1] 9/25
Lady [1] 2/3
Lamone [2]
language [5]

last [3]
late [1] 21/9
law [2]
laws [1] 5/22
lawsuit [1] 3/10
lawyers [2]
learned [2]
least [2]
leave [2]
leaving [1] 4/8
LEGAL [9]
legislative [2]
legislature [1] 11/20
less [1] 23/3
let [7]
Let's [3]
Lexington [1] 1/19
light [1] 21/2
like [4]
liken [2]
limiting [1] 20/15
linchpin [1] 9/14
list [47]
listened [1] 22/14
lists [7]
little [2]
Logan's [1] 5/2
long [12]
look [2]
looked [2]
looking [1] 4/4
lot [1] 19/10

**M**

machine [1] 27/8
machines [1] 15/11
made [3]
Main [1] 1/23
Maine [3]
maintain [1] 18/1
maintained [1] 24/11
maintenance [8]
make [6]
makes [3]
making [3]
mandate [1] 26/7
manner [3]
manners [1] 5/23
manufacturing [2]
many [1] 17/17
Mary [1] 1/22
Maryland [3]
mater [1] 4/22
Maureen [1] 1/14
may [5]
maybe [2]
me [10]
means [1] 6/8
melts [1] 19/20
mention [1] 9/5
mentioned [1] 27/9
mentions [1] 24/12
Michael [1] 1/21
mid [1] 21/9

**M**

might [3]
mind [1]  7/2
miss [1]  4/10
missed [1]  17/17
moderately [1]  16/15
moment [1]  13/25
more [5]
morning [1]  3/2
most [4]
motion [2]
motions [2]
Motor [4]
moved [3]
moves [1]  17/9
Mr [9]
Mr. [4]
Mr. Adams [1]  21/19
Mr. Christian [1]  4/18
Mr. Green [2]
Ms [3]
much [2]
must [6]
my [7]

**N**

names [1]  16/22
narrow [1]  19/5
narrowly [2]
National [3]
necessitate [1]  4/8
need [1]  19/7
needs [1]  19/16
new [2]
next [3]
nice [1]  4/24
nicer [1]  5/8
Nicholson [1]  2/2
Nixon [1]  1/15
no [14]
Noel [1]  1/14
nonbinding [1]  19/1
normally [1]  19/19
North [1]  13/14
not [44]
note [5]
notes [1]  27/11
notice [1]  17/14
notifies [1]  16/20
now [6]
number [4]
numbers [3]
NVRA [6]

**O**

obey [1]  14/16
objective [2]
obligations [1]  5/16
obsolete [1]  17/1
obstacle [2]
obviously [2]
occupy [1]  10/13
occur [1]  16/12
off [5]

office [1]  17/12
official [5]
officials [1]  9/25
often [1]  24/8
Okay [2]
old [7]
old-old [2]
on [30]
once [1]  25/18
one [11]
ones [1]  10/2
only [4]
Open [1]  3/1
operate [2]
operating [1]  12/9
opinion [4]
or [14]
oral [2]
order [1]  26/12
organization [2]
other [4]
others [1]  19/11
our [6]
ours [1]  22/11
out [16]
outcome [1]  6/2
output [1]  16/8
over [5]
own [1]  7/2

**P**

p.m [3]
page [1]  1/25
pages [2]
pages 1 [1]  27/13
panel [3]
part [3]
parties [4]
pass [1]  16/20
passed [6]
pay [1]  21/12
people [5]
per [2]
per se [2]
period [1]  17/2
periodically [1]  3/25
person [1]  8/15
pertaining [1]  21/9
ph [1]  19/24
photograph [1]  4/6
picked [1]  25/16
PILF [2]
place [2]
Places [2]
plain [5]
plaintiff [11]
plaintiffs [2]
play [2]
please [4]
pleasure [1]  4/9
plenty [1]  19/11
point [8]
points [1]  19/8
policies [1]  25/7

policy [1]  25/7
position [2]
positions [1]  7/13
possible [2]
possibly [1]  6/12
post [1]  17/12
practices [1]  15/15
precedence [1]  10/12
preclude [1]  14/10
preempt [1]  5/19
preempted [2]
preemption [30]
preexisted [1]  21/6
prejudice [1]  3/15
prescribed [1]  11/19
present [2]
presenting [1]  3/13
presents [2]
presumably [1]  15/16
presumption [10]
primarily [1]  25/23
primary [1]  20/24
principle [1]  7/11
printed [2]
privilege [1]  4/22
probably [2]
procedural [1]  3/8
procedures [1]
proceedings [3]
process [6]
produce [2]
product [6]
programs [2]
prohibited [1]  8/17
prohibition [3]
prohibitions [1]  22/12
Proj [1]  16/4
Project [14]
proper [1]  19/13
proposition [1]  14/3
provided [1]  17/1
provides [1]  11/17
provision [1]  8/25
provisions [2]
public [14]
publication [1]  20/13
publish [1]  22/11
pure [1]  3/19
purged [1]  17/17
purpose [4]
purposes [2]
pursuant [1]  11/6
purview [1]  9/19
put [2]

**Q**

qualifications [1]  25/3
qualified [1]  20/12
question [13]
questions [1]  6/2
quick [1]  10/6
quite [1]  4/24

**R**

rather [1]  3/20

RDR [2]
reach [2]
reaches [1]  22/9
read [4]
reading [5]
reaffirmed [2]
really [6]
reason [3]
reasonable [1]  21/12
reasonably [1]  17/2
recent [1]  25/24
recently [1]  13/18
recess [1]  4/9
recodified [1]  21/8
recognize [1]  4/18
recognized [1]  10/10
record [5]
records [18]
red [1]  23/3
redact [1]  21/20
redacted [1]  25/12
redaction [1]  21/16
refer [1]  11/17
reference [2]
refers [2]
regarding [2]
register [5]
registered [8]
registration [15]
regulation [1]  20/13
regulations [2]
regulatory [2]
Reid [1]  1/21
related [2]
relating [1]  5/23
released [1]  24/23
relying [2]
remembering [1]  17/15
removed [2]
Reno [1]  21/9
reply [1]  21/11
reported [2]
Reporter [3]
representatives [1]  11/19
request [2]
requested [2]
require [1]  23/8
required [1]  16/1
respect [7]
responses [1]  18/12
rest [1]  5/6
restricting [1]  20/12
restricts [1]  5/19
result [5]
Retirement [1]  10/14
Richard [1]  1/18
Richland [1]  2/7
right [24]
rights [1]  5/19
Riordann [1]  1/14
Road [1]  1/19
rolls [4]

room [2]
Roper [1]  1/22
roughly [1]  15/25
round [2]
ruled [4]
Run [1]  5/3
Russell [1]  5/5

**S**

said [9]
same [6]
Samuel [1]  1/15
saw [1]  4/15
say [15]
says [5]
SC [5]
Scalia [3]
scared [1]  11/12
scheme [1]  21/5
schemes [1]  20/5
school [4]
scope [1]  5/15
se [2]
seated [1]  3/2
second [1]  5/18
Section [17]
Section 8 [15]
Security [5]
see [4]
semester [1]  5/4
senators [2]
send [1]  17/14
sends [1]  16/22
SEPTEMBER [3]
serving [1]  20/23
session [1]  4/5
set [6]
settlement [1]  21/8
Seybold [1]  19/24
shall [1]  11/19
sharp [1]  4/1
Shawn [1]  1/14
shifts [1]  12/12
short [2]
shorthand [3]
should [6]
show [1]  9/7
shows [1]  25/8
sides [1]  4/2
sidewalk [1]  7/7
significant [1]  20/23
similar [3]
simply [1]  3/8
since [1]  24/15
single [1]  21/4
sir [7]
six [1]  16/1
skip [1]  6/24
snuffed [1]  11/12
so [34]
so-called [1]  8/25
Social [4]
solicitation [1]  21/24
some [11]

**S**

somebody [2]
somebody's [3]
something [2]
sorry [1]  10/20
sort [4]
SOUTH [18]
speak [2]
speaking [1]  11/4
spent [1]  6/24
spring [2]
squarely [4]
squeezed [1]  12/10
ss [1]  27/1
stage [1]  24/22
stand [1]  17/4
state [30]
stated [1]  3/9
states [10]
statute [32]
statutes [2]
statutory [3]
stenographic [1]
 27/11
STENOGRAPHICALLY
 [1]  2/6
step [1]  12/6
still [1]  17/14
stipulated [1]  3/19
Street [4]
struck [1]  8/5
students [5]
studied [1]  25/20
stuff [2]
subject [1]  6/6
submit [12]
subparts [1]  16/1
subsection [3]
subset [2]
such [2]
suggest [1]  7/24
Suite [4]
summary [5]
supplant [1]  10/15
supported [1]  19/13
supposed [1]  8/16
supreme [2]
sure [3]
surely [1]  19/2
surreply [2]
survival [1]  12/5
Swanson [1]  1/15
system [2]
system -- it [1]  20/1

**T**

tailored [1]  16/16
take [7]
taken [1]  7/13
talk [1]  20/21
talked [3]
talking [6]
tape [1]  23/3
targeted [1]  19/5

tell [3]
term [2]
terms [2]
test [1]  11/2
text [5]
textual [1]  19/13
than [2]
thank [10]
that [127]
that's [29]
their [3]
them [4]
then [16]
there [16]
there's [16]
therefore [3]
thereof [1]  11/20
these [3]
they [33]
they're [5]
they've [4]
thing [2]
things [2]
think [19]
this [40]
those [11]
though [3]
thought [1]  25/17
three [1]  10/9
threshold [2]
THROUGH [1]  1/9
tied [1]  14/15
ties [1]  24/24
time [16]
Times [1]  11/17
today [3]
together [3]
told [1]  4/6
too [1]  17/7
touching [1]  10/4
Tracey [1]  1/21
transcript [3]
Tribal [6]
true [1]  27/10
try [3]
trying [3]
two [9]
types [1]  10/10

**U**

U.S [2]
U.S.C [1]  6/7
U.S.C. [1]  15/25
ultimate [1]  23/21
unanimous [2]
under [15]
understand [2]
understanding [1]
 7/13
uniform [1]  7/18
UNITED [4]
University [1]  8/19
unless [1]  13/1

until [1]  4/9
up [4]
us [5]
use [2]
used [2]
using [2]
usually [1]  25/18

**V**

VA [1]  1/17
vehicle [1]  9/4
versus [6]
very [5]
view [1]  5/13
viewed [1]  21/2
Virginia [3]
vote [20]
Vote v [10]
voted [2]
voter [47]
voter's [1]  21/15
voters [6]
votes [1]  17/18

**W**

wait [1]  4/9
waive [1]  7/18
walk [2]
walks [1]  7/7
want [7]
wanted [5]
wants [3]
was [22]
wasn't [1]  12/7
Watch [2]
way [2]
we [42]
We'll [1]  3/23
we're [10]
we've [2]
weeds [1]  25/18
weight [1]  14/22
well [9]
Wells [1]  2/2
went [2]
were [13]
weren't [1]  8/14
West [1]  1/16
what [26]
when [10]
where [7]
whereas [2]
WHEREOF [1]  27/14
whether [5]
which [15]
while [3]
who [7]
whole [1]  8/10
why [7]
widget [2]
wiggle [1]  12/23
Wilkinson [3]
Wilkinson's [1]  6/11
will [9]
win [1]  12/21

within [6]
without [1]  3/15
WITNESS [1]  27/14
word [2]
words [4]
would [23]
wrap [1]  18/11
writing [1]  6/19
written [1]  26/12
wrong [3]
wrote [5]

**Y**

years [3]
yes [9]
yesterday [1]  22/15
yield [1]  26/11
you [57]
you'd [1]  6/25
you'll [1]  13/24
you're [6]
you've [5]
your [37]